**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 98-14003-CR-RYSKAMP/LYNCH**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**CHRISTOPHER R. BROWN,**

      **Defendant.**

_____/



**REPORT AND RECOMMENDATION ON SUPERSEDING**
**PETITION FOR VIOLATION OF SUPERVISED RELEASE**

**THIS CAUSE** having come on to be heard upon the aforementioned Superseding Petition and this Court having conducted an evidentiary hearing on October 31, 2007, recommends to the District Court as follows:

    1.    The Superseding Petition dated August 27, 2007 alleges three violations. Those violations are:

> **Violation Number 1**    **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about May 24, in Indian River County, Florida, the Defendant did commit the Sale of Cocaine and Possession of Cocaine, contrary to Florida Statute 893.13.

> **Violation Number 2**    **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about June 10, 2007, in Indian River County, Florida, the Defendant did commit felony battery, contrary to Florida Statute 784.041.

> **Violation Number 3**    **Violation of Special Condition**, by failing to maintain full-time, legitimate employment or being unemployed for a term of more than thirty (30) days.  On or about April 27, 2007, the Defendant failed to maintain full-time employment and has remained unemployed for a term of more than thirty (30) days.

2.     On October 31, 2007, this Court conducted an evidentiary hearing pursuant to an Order of Reference from the District Court. This Court will set forth the testimony and evidence received at the hearing. The Court will then analyze that evidence in light of the violations alleged and the applicable case law.

Witnesses

3.     The first witness called by the government was Frank Smith, the Defendant's United States Probation Officer. He testified that the Defendant was released from the Bureau of Prisons on or about January 26, 2007 and immediately began supervision under Mr. Smith. On or about February 6, 2007, Mr. Smith met with the Defendant and instructed him on the conditions of supervised release as well as the rules relating thereto.

4.     One of the Defendant's conditions of supervised release was the standard condition of employment which included the condition that the Defendant not be unemployed for more than thirty days at any given time. The Defendant told Mr. Smith that he wanted to open his own car detailing business. Mr. Smith testified that he told the Defendant he needed steady and regular employment which is verifiable. If the Defendant wanted to begin a car detailing business as a secondary job later, that would be up to him. However, it was made clear to the Defendant that he needed normal job which could be verified by Mr. Smith.

5.     The Defendant was placed on a job search. Mr. Smith discussed with the Defendant working in construction, the fast food industry, and even day labor. The Defendant kept complaining to Mr. Smith that he could not get a job because he was a convicted felon. Mr. Smith recalls that the Defendant claimed he had a job for a short

2

period of time but that ended because the employer changed his mind. Mr. Smith was never able to verify that employment.

6.      Mr. Smith did testify later in the hearing that he did receive pay stubs from the Defendant on or about April 23, 2007. The pay stubs related to a job at a packing house in Indian River County. The pay stubs reflected work for the weeks of March 16, March 23, March 30, April 6, April 13, and April 20th. Mr. Smith testified that the pay stub reflected a total of 219.98 hours worked. These are the only pay stubs or verification of employment that the Defendant ever presented to Mr. Smith.

7.      On cross-examination Mr. Smith stated that the Defendant told him that he had applied for jobs at several fast food restaurants, a CVS pharmacy, day labor jobs, a detailing job at a Saturn auto dealership and a detailing job at a Lincoln-Mercury dealership. However, Mr. Smith was never able to verify the fact that the Defendant even made application for these jobs since most employers would only verify employment, not applications for employment.

8.      Mr. Smith produced a copy of a traffic citation that the Defendant purportedly received in Indian River County on March 28, 2007 for a civil infraction of speeding. This traffic citation was admitted into evidence as Government's Exhibit No. 3. The purpose of introducing the traffic citation was to establish that at that time in March of 2007 the Defendant was driving a blue four door Cadillac. This issue is important, as the District Court will see later herein, since the government claims the Defendant was the individual who sold cocaine base to a confidential informant and at the time the Defendant was allegedly driving a blue four door vehicle.

3

9. It is not clear to this Court how or when Mr. Smith came into the possession of the traffic citation. This Court does not know if it was something that was produced by the Defendant to his U. S. Probation Officer or if Mr. Smith obtained it on his own. This was not clear from Mr. Smith's testimony at the hearing.

10. At the hearing, Mr. Smith testified that he knows of his own personal knowledge that the Defendant drives a blue Cadillac based upon the Defendant's own statements to him. The Defendant has told Mr. Smith in the past that he drives a blue Cadillac and Mr. Smith has seen that car at the Defendant's mother's house during supervisory visits. This is much better evidence, in this Court's estimation, than a description of a vehicle and a Uniform Traffic Citation. The Court gives very little weight to the description of the vehicle in Government's Exhibit No. 3. Rather, this Court relies upon the testimony from Mr. Smith that the Defendant informed him that he drives a blue Cadillac and that Mr. Smith has seen that vehicle in person when making supervisory visits.

11. For purposes of completion, this Court also notes that Mr. Smith testified on cross-examination that he knows the Defendant to have driven another type of car as well. Mr. Smith stated that he understands that the Defendant received a traffic citation outside of the Southern District of Florida when the Defendant made an unauthorized trip outside of this District. Mr. Smith testified that at that time it is his understanding that the Defendant was driving a gray Monte Carlo.

4

12.     Deputy Iovino of the Indian River County Sheriff's Office testified next for the government. He was working road patrol on June 10, 2007 when he was dispatched to a residence in Vero Beach concerning an aggravated battery. Deputy Iovino met with the alleged victim, James McLaughlin, at a gas station where he had gone to call the police. Deputy Iovino went back to the rooming house residence with Mr. McLaughlin. Mr. McLaughlin told Deputy Iovino that the Defendant came into the rooming house and had an argument with McLaughlin over a compact disc. McLaughlin stated that the Defendant stomped on his face, causing severe injuries. These injuries are depicted in several photographs admitted as Government's Composite Exhibit No. 1. McLaughlin knew the Defendant as Chris. Other individuals who were at the rooming house knew the Defendant by his last name only. These other witnesses refused to make any statements and the only evidence of the aggravated battery are the statements made by the victim, Mr. McLaughlin. A driver's license photograph of the Defendant was shown to the victim McLaughlin and he identified that as the individual who caused the injuries to his face.

13.     The Defendant was arrested approximately a week later based upon a tip that he would be driving in a particular vehicle. The government elicited testimony that at the time of his arrest there was someone else in the vehicle with him and that there was a bag of crack cocaine found near the Defendant. However, there is no evidence before this Court to link the Defendant to any illegal substances, contraband or drugs at the time of his arrest.

14.     Deputy Iovino last had contact with the victim, Mr. McLaughlin, two weeks after the incident occurred. Deputy Iovino was never able to locate Mr. McLaughlin and get him to a hearing at the State Attorney's Office where prosecution of the Defendant on

the aggravated battery charge would be discussed. Deputy Iovino testified that the State Attorney's Office eventually filed a "No Information" on the aggravated battery charge on July 10, 2007. It appears to this Court that Mr. McLaughlin was not around to testify as the victim and that prosecution by the State was virtually impossible.

15.     Deputy Iovino testified that he did not know anything about the background of Mr. McLaughlin and that it is not a routine practice of his department to conduct background investigations of victims of a crime. This Court certainly understands that fact. The Indian River County Sheriff's Office, or any police agency for that matter, cannot stop and conduct background investigations of alleged victims of a crime to determine whether or not an immediate arrest should be made. When more time is afforded, law enforcement certainly can take the opportunity to check into the background of a particular victim if that is germane to the issues at hand.

16.     In respect to Mr. McLaughlin's background, the Defendant introduced a composite exhibit of certified copies of judgments and convictions relating to Mr. McLaughlin's prior record. This was admitted into evidence as Defendant's Exhibit No. 1. This Court has reviewed that exhibit extensively after the conclusion of the hearing. It appears as though Mr. McLaughlin has convictions for uttering forged instruments (three counts July 1985), petit theft (August 1988), uttering a forged instrument (October 1989), grand theft (October 1991), possession of cocaine (two counts June 1999), sale of cocaine (two counts June 1999), and burglary of a structure (April 2004).

17.     Deputy Iovino testified further that when he did arrest the Defendant on the aggravated battery, the Defendant was driving a gray Monte Carlo. This was for the purpose of attempting to establish the Defendant drives more than one vehicle and is not

6

limited to any blue four door, which the District Court will later see is an important issue concerning the alleged sale of cocaine.

18.     Finally, during his testimony, Deputy Iovino did identify the Defendant at counsel table as the same person who Mr. McLaughlin identified as the person who committed the aggravated battery upon him and who Deputy Iovino arrested for that charge.

19.     The next witness to testify for the government was Detective Dilks of the Indian River County Sheriff's Office. He identified the Defendant in court as the individual he arrested for sale and possession of cocaine to a confidential informant. He testified that on or about May 24, 2007, he came across an individual, later identified as Michael Pierce. Apparently Pierce was having a problem with drug dependency. Pierce indicated the desire to assist law enforcement. Detective Dilks agreed to allow Pierce to act as a confidential informant (CI) to see if he could make a purchase of narcotics from the person who Pierce identified as his supplier. Detective Dilks testified at the hearing that Pierce was never arrested nor did Pierce commit any offenses in his presence which would have subjected him to any criminal charges. Detective Dilks was clear that Pierce was not under the threat of arrest and was not working off any criminal charges while assisting law enforcement as a CI.

20.     Apparently on that same day, May 24, 2007, Pierce acting as a CI, identified an individual by the street name "Mook" as his supplier. The government submits that "Mook" is the street name used by the Defendant. Pierce made a controlled telephone call

to "Mook" and ordered $40 worth of crack cocaine. It was agreed that the supplier, which the government submits is this Defendant, would deliver the crack cocaine to Pierce's house.

21.     After the telephone call was made, Detective Dilks searched Pierce and made sure that he did not have any money or narcotics on him. Further, Pierce was not under the influence of any drug, medication or alcoholic beverage according to Detective Dilks. Detective Dilks showed Pierce the Defendant's photo. Detective Dilks could not recall whether it was a driver's license photo or a booking photo from some previous file at his department. There appears to be some inconsistency in what Detective Dilks may have said during his deposition in the State case concerning where the photo came from. However, it was clear by his testimony at this hearing that regardless of what he said in his deposition in the State prosecution, that he cannot be certain as to where he obtained the Defendant's photo.    Nevertheless, Detective Dilks stated that Pierce identified the Defendant's photo as being the same person that he knew as "Mook" and who would be delivering the crack cocaine.

22.     Detective Dilks gave Pierce $40 in marked U.S. currency to purchase the crack cocaine. At the hearing, Detective Dilks testified that approximately one-half hour after Pierce made the telephone call, the Defendant arrived to deliver the narcotics. There was also a question as to Detective Dilks' recollection of time. The arrest affidavit that he completed in the State case, a copy of which was introduced into evidence as Defendant's Exhibit No. 4, states that "about an hour later Mook arrived." When confronted with this on cross-examination, Detective Dilks said that it could have been twenty minutes to an hour. He considered any of those time periods to be a "short period of time."

8

23.     At the time that the person arrived with the crack cocaine, Detective Dilks and another officer were hidden inside Pierce's home. Defendant's Exhibit No. 2 admitted into evidence is a composite exhibit showing photographs of the confidential informant's house. Law enforcement also had a camera hidden outside to take audio and video of the narcotics transaction when it took place. However, the camera apparently fell over and all that can be seen on the DVD of the narcotics transaction are the confidential informant's feet walking out to what appears to be the bottom part of the blue car. The individual in the blue car cannot be seen nor can anything above the calves of the confidential informant. This Court has looked at the DVD which was admitted into evidence as Defendant's Exhibit No. 6. This Court also points out that Defendant's Exhibit No. 6 contains a recording of what appears to be a post-arrest interview by law enforcement of the Defendant in respect to the narcotics case. The Defendant makes no admissions during the post-arrest statement.

24.     As the blue four door car pulls into Pierce's driveway, Pierce walks out and purportedly hands the $40 to the person he identifies as the Defendant in exchange for a plastic baggie containing crack cocaine. Detective Dilks stated that from his position inside the house he could not identify who was driving the blue four door car. He could identify the fact that it was a blue four door car, but could not determine the particular make or model.

25.     Detective Dilks testified that Pierce immediately returned to the home and handed the crack cocaine to him. It was then taken into custody. The confidential informant was again searched and had no money nor other narcotics on his person. After the transaction took place, Pierce was once again shown a photograph of the Defendant

9

and Pierce confirmed that that was the individual from whom he had just purchased the
crack cocaine.

26.     Detective Dilks testified that the blue four door vehicle backed out of the
driveway and headed away from the home. Detective Dilks got on his police radio and
requested other law enforcement units to pick up surveillance of the vehicle. He testified
that a couple of different law enforcement officers maintained surveillance of the vehicle
which was later stopped. However, Detective Dilks did not know the specifics about who,
when and where the other officers picked up surveillance of the vehicle purportedly driven
by the Defendant from Pierce's house nor did Detective Dilks know where the traffic stop
took place. This is important since this Court finds that hearsay testimony concerning what
these other officers saw and did to not be reliable based upon the lack of detail which
Detective Dilks could provide.

27.     When the Defendant was stopped by law enforcement at some location,
Detective Dilks considered his case to be a continuing investigation. Therefore, they did
not want to seize the marked investigative funds or otherwise make the Defendant aware
that he had just sold narcotics to an informant. Detective Dilks testified that the traffic stop
was only to identify the Defendant as being the same person who had driven the vehicle
away from Pierce's house. No money, no investigative funds and narcotics were located
on the Defendant nor in his vehicle because of the continuing investigation. Therefore, the
only evidence that the Defendant was the one that sold the narcotics is the statements
made by Pierce identifying the Defendant as the source of the crack cocaine delivered to
his residence.

10

28.     The Defendant was not arrested until a couple of months later according to Detective Dilks. He first testified at the hearing that the arrest occurred four to six months after the sale on May 24, 2007 and then corrected himself to say that he did not really remember exactly when the Defendant was arrested on the Federal warrant arising out of this case, but that it was a couple of months after the sale of crack cocaine to Pierce. The record reflects that the Defendant was arrested July 20, 2007, upon an arrest warrant issued in this case.

29.     On cross-examination, Detective Dilks stated that other investigative information led him to believe that the Defendant was known by the street name "Mook" in Indian River County. This is why he obtained a photograph of the Defendant for Pierce to review prior to conducting the controlled buy at Pierce's house.

30.     The Defendant also introduced Exhibit No. 3 into evidence which is a composite exhibit listing certain judgments and convictions of the confidential informant, Michael Pierce. This Court has taken time and has reviewed each of those. It appears that Pierce has prior convictions for possession of cocaine (October 1988), tampering with evidence/possession of cocaine/possession of drug paraphernalia (July 1999) and issuing worthless checks (twelve counts February 2001).

31.     As stated previously, the identification of a blue four door vehicle, which is also a vehicle that U. S. Probation Officer Frank Smith knows the Defendant to drive, is important for purposes of attempting to establish the Defendant as the individual who delivered the crack cocaine to Pierce's residence. When Detective Dilks was re-called as a witness by the defense at this hearing, he testified that when he arrested the Defendant

11

on July 20, 2007, on a warrant issued in this matter, that the Defendant was driving a gray PT Cruiser.

32.     The next witness to testify for the government was Babu Thomas who is a Chemist at the Indian River Crime Lab in Fort Pierce, Florida.  Mr. Thomas' expert qualifications were put on the record and he was qualified as an expert witness.  He regularly examines narcotics in State and Federal criminal cases in this jurisdiction.  He estimated that he has testified in court over 1,500 times.

33.     Government's Exhibit No. 2 in evidence was identified by Mr. Thomas as the bag containing the crack cocaine submitted to him for analysis in this case.  He identified the evidence bag by his laboratory number on the front.  His examination and analysis of the substance revealed it to be cocaine base, also known as crack cocaine.  He testified that it weighed .4 of a gram.

34.     This Court notes that Government's Exhibit No. 2, being the evidence bag with the crack cocaine, was returned to the government at the conclusion of the hearing based upon stipulation of the parties.

35.     The Defendant called Deputy Iovino and Detective Dilks back as witnesses simply to establish different vehicles the Defendant was driving. This Court has related this testimony previously herein.  Deputy Iovino stated that when he arrested the Defendant,

12

the Defendant was driving a gray Monte Carlo. As stated above, Detective Dilks stated that the Defendant was driving a gray PT Cruiser on the day that he arrested the Defendant on the Federal arrest warrant.

36.     The next witness for the Defendant was Federal Public Defender Office Investigator Vezin. Mr. Vezin testified that he obtained certified copies of the judgments and convictions relating to Mr. McLaughlin and Mr. Pierce. Further, he obtained a copy of the video and the statement, Defendant's Exhibit No. 6. He also assisted Ms. Barrist in preparing the map of the neighborhood where Pierce lived. This was admitted into evidence as Defendant's Exhibit No. 7. Mr. Vezin also took the composite photos of the area around Pierce's neighborhood where the drug transaction took place. This composite exhibit was admitted as Defendant's Exhibit No. 8.

37.     In rebuttal, the government introduced a copy of the Defendant's Pre-Sentence Investigation previously done in this case at the time that he was originally sentenced by the District Court. While a copy of that Pre-Sentence Investigation dated August of 2005 may or may not be in the court file, this Court admitted a copy as Government's Exhibit No. 4 so that it could be reviewed by the District Court.

38.     The government stated that it introduced the Pre-Sentence Investigation for the purpose of identifying the Defendant as having previously used the street name

"Mook."   Paragraph 31 of the Pre-Sentence Investigation recites certain information where the Defendant is apparently known in the Indian River County area by the street name "Mook."

## ANALYSIS

39.   Revocation of supervised release is authorized when a court finds that a defendant has violated a term of his supervised release by a preponderance of the evidence.   18 U.S.C. §3583(e)(3).   The term "preponderance of the evidence", is a common law term describing an evidentiary burden that one must carry to establish certain facts.   It simply requires that the trier of fact believe that the existence of a fact is more probable than its non-existence. United States v. Trainor, 376 F.3d 1325 (11th Cir. 2004). This is the standard of review required as this Court analyzes the facts and applies them to the three violations set forth in the Superseding Petition.

40.   The Federal Rules of Evidence do not apply in revocation proceedings. Hearsay is admissible in such proceedings.   However, the Court must balance the Defendant's right to confront adverse witnesses and make a specific finding that any particular hearsay testimony was reliable or not.   In doing so, the Court must weigh the Defendant's right of confrontation against the government's reasons for not producing a particular witness. United States v. Frazier, 26 F.3d 110 (11th Cir. 1994).   In making its findings and conducting this balancing test, the Court should take into consideration any reasons given by the Defendant as to why particular hearsay evidence is unreliable.

41.   In conducting this balancing test, this Court finds that the hearsay testimony of Mr. McLaughlin, presented through Deputy Iovino, is not reliable.   Apparently Mr. McLaughlin is not able to be located by law enforcement.   The last time Deputy Iovino saw

14

him was two weeks after the June 10, 2007 incident in which he claims the Defendant stomped on his face.  There are no other witnesses to that incident.  There is no independent corroboration that the Defendant was even in the vicinity when the alleged aggravated battery took place. There may have been other witnesses who saw something, but they have not come forward. Therefore, this Court finds that permitting the hearsay testimony of Deputy Iovino relating to the facts told to him by Mr. McLaughlin does not meet the minimal due process rights of confrontation requirements to which the Defendant is entitled. This Court is not unmindful that the victim McLaughlin has obvious injuries as depicted in the photographs admitted into evidence in this case. However, the seriousness of the injuries do not overcome the unreliability of the hearsay identification of the Defendant as being the cause of those injuries.

42.    Additionally, this Court has to take into consideration the prior convictions that Mr. McLaughlin has.  His convictions range from theft, forgery and burglary, to narcotics sale and possession.  Many of these offenses involve honesty and truth, such as the fraud and theft crimes.  The fact that there is no independent corroboration of Mr. McLaughlin's hearsay statements to Deputy Iovino make them unreliable hearsay evidence.  Based upon all of the foregoing, this Court will recommend that the government has not established by a preponderance of the evidence Violation Number 2 set forth in the Superseding Petition relating to the alleged felony battery on Mr. McLaughlin.

43.    This Court finds that there is independent corroboration for some of the hearsay evidence admitted in relation to the sale of crack cocaine, which is alleged in Violation Number 1 of the Superseding Petition. Informant Pierce's hearsay statements to Detective Dilks that the Defendant was the person who delivered the crack cocaine to

15

his house, is reliable since it is corroborated by other independent facts which this Court has determined in making the balancing test required.

44.    First, the Defendant has admitted to his United States Probation Officer, Mr. Smith, that he has access to and drives a blue four door car. Mr. Smith has seen that same vehicle during supervisory visits to the Defendant's mother's residence. A blue four door vehicle can be seen on the video and was seen by Detective Dilks delivering the crack cocaine to the Pierce residence. The fact that the Defendant also had been seen driving a Monte Carlo and a PT Cruiser does not remove from consideration the fact that he also drives a blue four door vehicle.

45.    As stated previously, this Court finds the hearsay testimony relating to the March 2007 traffic citation identifying the Defendant as driving a four door blue Cadillac is not sufficiently established to be reliable. This Court is not considering that evidence, Government's Exhibit No. 3 as establishing any fact against this Defendant herein.

46.    This Court has also stated previously herein that the hearsay testimony of the other law enforcement officers in Indian River County who purportedly had the Defendant's vehicle under continuous surveillance until a traffic stop was made, is likewise unreliable because Detective Dilks was very vague in any details that he knew concerning where the vehicle traveled, what officers observed the vehicle at any given place, and where the Defendant's vehicle was ultimately stopped. There is no independent corroboration by way of seizure of investigative funds or narcotics either. This Court understands the reasons why that was not done since this was a continuing investigation. However, in balancing all of the hearsay evidence relating to the purported constant surveillance of the Defendant's

16

vehicle from the Pierce house to the traffic stop, this Court finds that the hearsay evidence is not sufficiently established to be reliable.

47.     Nevertheless, there is sufficient evidence in this Court's view to substantiate the hearsay testimony of the informant Pierce that the Defendant was the person who delivered the crack cocaine to him. Pierce identified his source of supply as an individual named "Mook." Detective Dilks testified that his investigation revealed that the Defendant is known in the Indian River County area as "Mook." The Pre-Sentence Investigation completed in this case in August of 2005 has reference to the Defendant's street name as "Mook" in the Indian River County area. The informant Pierce was shown a photograph of an individual with the street name "Mook" which was a photograph of this Defendant. The informant Pierce identified that photograph as the person he knew as "Mook" and who delivered the crack cocaine to him at this residence while law enforcement waited inside his home. Detective Dilks was in the informant Pierce's house. Detective Dilks gave Pierce investigative funds and made certain that he had no narcotics nor other monies on him. Detective Dilks observed the informant Pierce walk out to a blue four door vehicle, make some sort of an exchange and then come back into his residence. When he came back into the residence, Detective Dilks found that Pierce had none of the investigative funds on his person and had a plastic baggie containing crack cocaine. All of these facts taken in conjunction with the established facts of the Defendant's use of a blue four door vehicle corroborate the hearsay testimony of the informant Pierce which identified this Defendant as being the individual who sold him the crack cocaine on May 24, 2007.

17

48.     This Court has considered the judgments and convictions of the confidential informant Pierce. As mentioned earlier, he has twelve convictions for worthless checks, convictions for tampering with evidence, possession of cocaine, possession of drug paraphernalia and possession of cocaine. While these prior convictions are factors this Court must take into consideration, they do not in and of themselves completely eliminate Pierce's statements to law enforcement. This Court has weighed the totality of the evidence as referenced above and taken into consideration Pierce's prior convictions. This Court finds that his prior convictions do not in and of themselves outweigh the reliability of the statements he made to law enforcement taken in conjunction with all of the evidence surrounding the sale of the crack cocaine. In making the required balancing test, this Court finds that Pierce's hearsay statements to Detective Dilks are reliable and sufficient to establish by a preponderance of the evidence that the Defendant did sell the crack cocaine to the informant Pierce as outlined in Violation Number 1 of the Superseding Petition.

49.     In respect to the third violation which is the employment requirement, this Court finds that the government has established that violation by a preponderance of the evidence as well. While the Defendant may have worked at a citrus packing house from March 16 through the third week of April of 2007, this is not full-time employment. His condition of supervised release required him to not be unemployed for more than thirty days at a time. When one looks at the fact that the Defendant was released from the Bureau of Prisons on or about January 26, 2007 and only began working March 16, 2007, it can be seen that there was a long period of time where he was unemployed. Further, the evidence presented to this Court was that the Defendant was arrested in this case on July 20, 2007. Therefore, it is a reasonable assumption that he was unemployed from on

18

or about April 27, 2007 through that date of arrest since the Defendant has not provided his U. S. Probation Officer with any other verifiable employment. The fact that he applied for various jobs was not verifiable and he was never told that this was acceptable.

50.     At the very least, the evidence before this Court is that the Defendant was unemployed for the entire month of February and the first two weeks of March. After he completed work for the week of April 20, 2007, he was apparently unemployed for the entire months of May, June, and the better part of July of 2007. The Defendant has not presented any evidence to the contrary. As a result, this Court finds that the government has established by a preponderance of the evidence that the Defendant has failed to maintain full employment and has remained unemployed for a term of more than thirty days.

**ACCORDINGLY**, this Court recommends to the District Court that the government has established by a preponderance of the evidence Violation Numbers 1 and 3 set forth in the Superseding Petition and that the Defendant's supervised release should be revoked in respect thereto, and that the government has not established by a preponderance of the evidence Violation Number 2 set forth in the Superseding Petition.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Kenneth L. Ryskamp, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this _____ day of November, 2007, at Fort Pierce,

Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Kenneth L. Ryskamp
AUSA Rinku Talwar
AFPD Lori Barrist
U. S. Probation
U. S. Marshal

20